## Case No. 16,940.

### VIESCA v. WYCHE.

[3 Woods, 336.] [1]

Circuit Court, W. D. Texas. June Term, 1878.

TRESPASS TO TRY TITLE — NECESSARY PROOFS — MEXICAN GRANTS—DOCUMENTARY EVIDENCE—ARCHIVAL RECORDS.

1. Under the statute law of Texas, it is not necessary, in an action of trespass to try title, to prove an actual trespass by defendant, except in cases where there is no controversy about the title, but only as to boundaries, and where the plaintiff having the superior title charges the defendant with trespassing on his land.

2. The document offered in evidence in this case as a link in plaintiff's title, dated at Monclova, March 18, 1835, signed by José Benito Camacho Y. Estrada, as deputy secretary, or second clerk, purporting to be an appointment by José Maria Cantu, ad interim governor of Coahuila and Texas, of José Maria Balmaceda, as commissioner for the distribution of lands to the colonists of the empressarios MacMullen and McGloin, is valid and genuine.

3. The document purports to be an original or protocol, has all the appearance of being such, is authenticated by the seal of the state, and there is no suggestion that it is a forged instrument.

4. The fact that the document is signed by the deputy and not by the principal secretary, is not fatal to its validity. The deputy secretary was considered competent at that time to sign decrees of the government.

5. In this case the principal secretary, José Maria Falcon, was the attorney of Viesca, the grantee of the title, and made the application to

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

the governor for the identical appointment in question; hence there was a propriety in his not signing it.

6. A document shown to be a genuine original act of the government, is proper evidence of the appointment or decree which it embodies.

7. The proper depository for such a document is among the archives of the state. But its absence therefrom is not fatal to its authenticity, but may be explained.

This was an action of trespass to try title [against H. C. Wyche]. The case turned wholly upon questions of law. A jury was impaneled pro forma, to which instructions were given by the court, and, in accordance therewith, they were directed to return a verdict for plaintiff [Roberto Viesca.]

Wm. M. Walton, for plaintiff.

The bill is claimed to have issued by virtue of a special commission to Balmaceda, and this authority is questioned upon the ground that it is neither a matrix in the archives of the state department, nor testimony of such, in contemplation of law. That it is competent to question the authority of the officer issuing, is well settled: U. S. v. Arredondo, 6 Pet. [31 U. S.] 691. If it appear that he was not legally authorized to grant the title, then it is void and cannot be used as evidence of title. State v. Delesdenier, 7 Tex. 76; Sampeyreac & Stewart v. U. S., 7 Pet. [32 U. S.] 222; Stoddard v. Chambers, 2 How. [43 U. S.] 284. The protocols or commissions of commissioners or alcaldes to make titles to purchasers remained in the archives of the executive department of the state of Coahuila and Texas. Paschal v. Perez, 7 Tex. 348; U. S. v. Sutter, 21 How. [62 U. S.] 170; Luco v. U. S., 23 How. [64 U. S.] 515; Palmer v. U. S., 24 How. [65 U. S.] 125. Copies of such decrees must be authorized (authenticated) by the secretary, and "without this requisite they shall not be obeyed, or be productive of faith" (section 5, art. 141, Const. Coahuila & Texas), and this article fully contemplates that originals signed by the governor and secretary shall remain in the archives, and a copy thereof issued to the party, attested by the secretary. The secretary shall sign every copy emanating from the office under his charge: Laws Coahuila & Texas, p. 31, § 3, art. 51. In Mitchel v. U. S., 9 Pet. [34 U. S.] 723, the court said: "The original is a record, and preserved in the office, which cannot be taken out; a testimonio, or copy, is delivered to the party." Such copies (testimonios) must come accompanied with the certificate of the keeper of the public archives, who declares or certifies to have copied them by order of the king (governor). 1 White, Rec. p. 297; Paschal v. Perez, supra. The testimonio of a decree of concession, set out in Jenkins v. Chambers, 9 Tex. 167, shows how such executive orders are authorized or authenticated by the secretary. It is believed that the article of the constitution of Coahuila and Texas, supra, and decree of No. 102, of the laws of Coa-

huila and Texas, fully authorize the retention of the original in the archives of the state department, as stated in Paschal v. Perez, supra, and it is the copy (testimonio) which serves as the officer's commission in his possession, to attach to the act or deed as his authority to grant it. The commission is a document issued or made by an officer in matters pertinent to the office he exercises with public authority, and is an authentic document (Roa Barcena's Man. p. 44), and subject to the rules governing the execution of such; and the rule is, "that the officer authenticates it with his signature and seal, and puts it and retains it in his book of protocols, or register, a sealed copy of the instrument not to be given to the party without these requirements being complied with, under penalty of the copy being null," etc. Escriche, Dict. p. 889; L. 54, tit. 18, pt. 3; L. 3, tit. 8, lib. 1, del Fuero Real; L. §§ 1, 6, tit. 25, tit. 10, Nov. Rec. The instrument, without a protocol, has no authority, and documents made by governors are subject to the rule. U. S. v. Sutter, supra; Luco v. U. S., supra; Palmer v. U. S., supra. It seems Balmaceda took from his pocket, just as the government was about to be changed by revolution, an original document, without a protocol or counterpart in any of the public archives, and claiming none such, and attached it to a title extended by him, as the only manifestation of authority in him to issue the same. It is believed that the rule is well established that such documents are no authority in the hands of an individual who proposes to act or claim rights under them.

Bethel Coopwood, F. W. Chandler, and Wm. McGregor, for defendant.

Before BRADLEY, Circuit Justice, and DUVAL, District Judge.

BRADLEY, Circuit Justice (charging jury). The defendant claims a verdict in this case because the plaintiffs have failed to prove that he was in possession of, or had committed any trespass on the premises described in the petition or any part thereof. On this point the statute of 1840, section six, is very explicit, declaring that "it shall not be necessary to prove an actual trespass on the part of the defendant to support this action," meaning the action of trespass to try title. It was decided, however, in the case of Strond v. Springfield, 28 Tex. 649, that it is necessary to prove trespass when there is no controversy about the title, but only as to boundaries, and where the plaintiff, having the superior title, charges the defendants with trespassing on his land. That decision was clearly right, for, in that case, unless the plaintiff could prove that the defendants had trespassed on his land, he had no cause of action against them, since they conceded his title to be good, and merely questioned the fact that their occupation was within the boundaries of his title. But the statute certainly applies to cases where the title is disputed, whether the

defendants have actually attempted to take possession or not. The adverse title, or contestation, set up by them is a sufficient trespass to justify the bringing of the action. It is a cloud on the plaintiff's title, which he has a right to have removed.

Had the defendant, in the present case, contented himself not to dispute the plaintiffs' title, it would have been necessary for the plaintiffs to prove that the defendant was in possession at the time of bringing the suit, in order to obtain a verdict. But the defendant has contested the plaintiffs' title from the beginning. Having done this, he cannot now get out of court by setting up, as a dernier resort, that he was not in possession. This being so, it is unnecessary for the jury to inquire about any actual trespass. The only question will be as to the validity of the plaintiffs' title; and that depends upon the legality of the proof of a certain document which forms one of the links of that title. This document is the appointment, by the governor of Coahuila and Texas, of José Maria Balmaceda as commissioner for the distribution of lands to the colonists of the empressarios MacMullen and McGloin, which bears date at Monclova, March 18, 1835. The importance of this document in the case arises from the fact that all the subsequent steps in the completion of the title were taken by, or under the authority of Balmaceda as such commissioner. The concession had been made to José Maria Viesca, the ancestor of the plaintiffs, on the 16th of April, 1831; and it would seem that the tract had been actually surveyed in October, 1833, by Carvajal, the government surveyor, but no further steps had been taken. At the time when the document in question bears date, José Maria Cantu, by whom it purports to be signed as governor, was governor ad interim at Monclova, having been appointed by the congress and instituted in office on the 12th of March, 1835; and José Benito Camacho Y. Estrada, by whom it purports to be signed as deputy secretary, or second clerk, was deputy secretary of the government at that time. The decrees of the congress at this period are signed by Cantu, as governor, and by Camacho Y. Estrada, as deputy secretary, in the same manner as the document in question is signed. See Laws and Decrees of Coahuila and Texas, March, 1835.

This document purports to be an original, or protocol, and has all the appearance of being such, and is authenticated by the seal of the state; and no suggestion has been made that it is a forged instrument. It is objected to it, that Camacho Y. Estrada was only deputy secretary, and that to be a valid act of the government, it ought to be signed by the principal secretary. But it seems that the deputy was considered competent to sign the decrees of the government at this time. It further appears by other decrees made nearly at the same time, that the principal secretary was José Maria Falcon, who was the attorney of Viesca, the grantee of the title in this case, and who made the application to the governor for the very appointment in question. Hence there was a propriety in his not signing it. It was decided by the supreme court of Texas, in Hancock v. McKinney, 7 Tex. 384, that when a concession of land in sale to a person who, at the time, was secretary of state, is authenticated by the first officer instead of the secretary of state, it is no objection to the validity of the title.

The question then is, whether an original act of the government (for that this is an original act is demonstrated by the seal of the state) is proper evidence of the appointment or decree which it embodies? And we cannot conceive how this can well be doubted. A testimonio of it would have been received without objection; and yet, the highest value of a testimonio is that it faithfully presents and represents the original. The only circumstance calculated to raise a question on the subject, is the fact that this original commission did not remain amongst the archives of the state. That is, undoubtedly, the proper place for the originals to be. But plausible reasons for its presence here may be suggested. A duplicate original may have been executed; or, in the public disturbances which soon afterwards took place, original documents may have been removed to places of greater safety, or to places of public deposit nearer to the locality of the lands to which they related. This document is found, with the other title papers in the case, bound up amongst the public archives of the land office. These particular papers (relating to the present title) were deposited in the office by Col. Volney E. Howard, in 1846, and probably came from the archives deposited at San Antonio—the most likely and natural place to look for them. Being a genuine instrument, found in connection with the other title papers in the case, at a place where it would most likely be (if not retained amongst the original archives at Monclova or Sattillo), we think that its presence here, especially in view of the great lapse of time which has intervened since it became a part of the public archives of this state, ought not to cast discredit upon its validity. The authorities to which I have been referred by defendant's counsel seem to relate more especially to acts passed before a notary between private persons, and not to public acts of the government.

Something was said on the argument about irregular grants having been made by Governor Cantu, which were afterwards disapproved by the congress, but it does not appear that this was one of them. This was merely the appointment of a commissioner for carrying out a previous concession made several years before.

We think the document must be received as evidence. This being the only remaining question in the case, the verdict must be for the plaintiffs.